STATE of Tennessee, Appellee,

v.

James C. LEVEYE, Appellant.

Supreme Court of Tennessee,
at Nashville.

Sept. 24, 1990.

James B. Dunn, Larry D. Drolsum, Waynick, Dunn & Cate, Nashville, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Linda Ann Hammond, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

FONES, Justice.

Defendant was convicted of three counts of burglary of a motor vehicle, two counts of petit larceny, grand larceny, felonious possession of explosives and habitual criminal. The Court of Criminal Appeals affirmed convictions on all offenses except habitual criminal and remanded for resentencing. The State does not contest the habitual criminal issue. We granted Defendant's Rule 11 application to consider the validity of the warrantless vehicle search, upheld by both courts below. We affirm.

On 23 November 1987 the Williamson County Sheriff's Department received a call reporting a vehicle burglary at the 76 Truck Stop at Goosecreek By–Pass and I–65. Detective Garlock and Deputy Beard made the investigation at the scene of the crime. They interviewed the victims, Ross and Sandra Rexroad and obtained a list of the missing items taken from their truck. A witness told them he had seen a barefooted black adult male running around the parking lot near the Rexroad vehicle, who was approximately 6 feet tall with a slim build. Garlock asked the manager if anyone fitting that description had checked into the truck stop. He checked the records and advised Garlock that one James Leveye had taken a room upstairs and that he matched that description. The manager and the officers proceeded to the room taken by Leveye with a passkey, and when no one answered the door, entered. A pair of boots matching the description given by the Rexroads as taken from their vehicle were observed in the middle of the room. Mr. Rexroad was summoned and identified the boots as his. They also found in the room evidence that two persons were occupying the room, Donald Brown and James Leveye. Returning to the lobby of the truck stop, Garlock saw a blue and white Pinto drive onto the premises and park. Shortly thereafter the driver of the Pinto entered the lobby of the truck stop carrying a suitcase, a couple of nylon bags, a small duffle bag and a brief case. At first he denied that his name was James Leveye or Donald Brown, but later admitted he was Leveye. Mrs. Rexroad was present and identified the green duffle bag Defendant was carrying as hers and that it was taken from their truck. A pat-down search of Defendant revealed several bulky items that turned out to be a cassette tape, a key ring and other items belonging to Mrs. Rexroad. A search of the bags that Defendant was carrying contained other property of the Rexroads. At that point, Garlock informed defendant that he was under arrest, and advised him of his *Miranda* rights. The victims, defendant, Garlock and Beard were all present in the lobby of the truck stop at that time.

The officers found Defendant's Pinto locked. With the aid of a flashlight an officer observed bags and boxes inside the car. They had not recovered all of the property that the Rexroads had reported were missing from their truck and after arresting Defendant and informing him of his rights, his Pinto was towed to the Sheriff's Department for inventory.

Defendant's Pinto was properly parked on the truck stop lot approximately 75 yards from the place where Defendant was arrested. Garlock testified that he had the vehicle towed to the department because of the mobility of the vehicle, the possibility that an accomplice or other person might have keys and remove the vehicle or its contents before a search warrant could be obtained.

When the officers returned to the sheriff's office, a magistrate was available and arrest warrants were obtained for Defendant's arrest but no attempt was made to obtain a search warrant to search Defendant's Pinto. A search of that vehicle revealed additional property stolen from the Rexroads' truck and property stolen from vehicles belonging to James King and Brenda Carroll. A box of blasting caps was also found in Defendant's vehicle.

The majority opinion of the Court of Criminal Appeals held that the search of Defendant's vehicle and seizure of the stolen property therein was a lawful search and seizure because there was probable cause to believe that unrecovered property stolen from the Rexroads was in the Defendant's Pinto and there were exigent circumstances. The exigent circumstances were said to arise out of the factual scenario that it had been established that Defendant had stolen property from the Rexroads, and a search of his person and hotel room left other property to be accounted for; that Defendant had been seen exiting the Pinto with part of the stolen property, there was strong reason to believe the missing items were therein, as several bags of other items were visible through the windows. Also, there was evidence that one Donald Brown might be an accomplice and he or another person might be in a position to remove the Pinto or its contents.

The dissenting member of the court held that the facts relied upon by the majority as exigent circumstances were "ordinary and usual", based only upon the mobility of vehicles and that, "defendant *may* have an accomplice who *may* have a key to the vehicle." He observed that in all of the cases relied upon by the majority, "the vehicle was being operated upon a public road by the accused immediately prior to its being stopped and searched."

The dissent cites *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *State v. Shrum*, 643 S.W.2d 891

(Tenn.1982); and *Houston v. State*, 593 S.W.2d 267 (Tenn.1980) as examples of cases wherein vehicles were stopped on or adjacent to a public highway, the opportunity for flight, the confederates to accomplish it, and perhaps the alerted necessity to do so, existed. When those circumstances are present there is no room for disagreement on the presence of exigent circumstances. The likelihood that the vehicle will escape before the facts constituting probable cause can be presented to a magistrate are sufficiently strong to create the exigency.

Cases involving vehicles parked and unoccupied on public or private property, where the factors for judging the probabilities of "quick flight" are not clear, are more difficult to resolve. *See e.g., State v. Byerley*, 635 S.W.2d 511 (Tenn.1982); *State v. Longstreet*, 619 S.W.2d 97 (Tenn.1981); *Fuqua v. Armour*, 543 S.W.2d 64 (Tenn. 1976); *State v. Nolan*, 588 S.W.2d 777 (Tenn.Crim.App.1979); and *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

If we have a general rule in Tennessee for guidance in the determination of the presence or absence of exigent circumstances, it is to be found in the following quote from *Byerley:*

> The final issue is whether exigent circumstances existed justifying the seizure. In *Fuqua v. Armour*, 543 S.W.2d 64 (Tenn.1976), the Court held that when probable cause exists, an automobile may be searched or seized without a warrant so long as exigent circumstances exist. Exigent circumstances exist when a vehicle is moving on a public highway and it is impracticable to obtain a search warrant but do not exist "after the vehicle has completed its journey and is at rest on private premises." *Id.* at 66. The law of *Fuqua* reiterates that there is no exigency *per se* in the inherent mobility of cars. *Id.* at 67. While the word "automobile" is not a "talisman in whose presence the Fourth Amendment disappears," *Fuqua v. Armour, supra* at 67,

citing *Coolidge*, the fact that a car is parked on private grounds likewise does not automatically foreclose the occurrence of some exigency permitting a warrantless search. To claim that *Fuqua* stands for the proposition that exigent circumstance can never occur in relation to a car parked on private property is erroneous. This case is significantly distinguishable from the facts in *Fuqua*, where the car had been parked in the same place in a driveway for three weeks, and at a time when defendant was in custody. Under the circumstances presented in *Fuqua*, the relative ease in obtaining a warrant for the seizure of the car was crucial.

... This case presents the kind of fluid situation in which the car is not secured, the risk of delay to obtain a warrant is high and, therefore, not within the contemplation of *Fuqua*.

■ In short, if the parked car presents a "fluid" situation it is probably reasonable to search without a warrant, but if "stable" a warrant would be required. The result is an ad hoc, case by case determination.

■ Our research discloses that the federal law with respect to the exigent circumstance requirement to invoke the "vehicle" or "automobile exception" to the general rule requiring a warrant before a search, has been significantly altered by *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).

In *Carney* the officers conducted a warrantless search of a Dodge Midas mini-motor house parked in a parking lot in downtown San Diego, California. The Court rejected Defendant's contention that his motor home should not be subjected to the rules governing the "vehicle exception" because it was capable of functioning as a home. The Court found that it was licensed to operate on public streets, was serviced in public places and was so situated that an objective observer would conclude, "that it was being used not as a residence, but as a vehicle." The Court

concluded that absent prompt search and seizure it could readily have been moved beyond the reach of the police, and treated Defendant's mobile home as an automobile in applying the probable cause and exigent circumstances elements of the vehicle exception to the Fourth Amendment search warrant requirement.

The officers in *Carney* had information that Defendant was using the motor home to exchange marijuana for sex. They observed Defendant approach a youth, who accompanied Defendant to the motor home, saw the two enter, close the shades and more than an hour later the youth exit. The youth was questioned, he acknowledged that he was given marijuana in exchange for sexual contacts. At the request of the officers, he knocked on the door of the motor home, Defendant stepped out and one of the officers entered, without a warrant or consent and observed marijuana, plastic bags and a scale of the kind used in weighing drugs. Defendant was arrested and the motor home was taken to the police station and searched. Additional quantities of marijuana were found in cupboards and the refrigerator.

The Court began its analysis with renewed emphasis on the basic rationale for the vehicle exception, its mobility, quoting from *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); and *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The major emphasis of the opinion was upon the second "justification for the vehicle exception," the reduced expectation of privacy, derived not from the fact that the area to be searched is in plain view, "but from the pervasive regulation of vehicles capable of traveling on the public highways," citing *Cody v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) and quoting from *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

The *Carney* court continued as follows:

The public is fully aware that it is accorded less privacy in its automobiles because of this compelling governmental need for regulation. Historically, "individuals always [have] been on notice that movable vessels may be stopped and searched on facts giving rise to probable cause that the vehicle contains contraband, without the protection afforded by a magistrate's prior evaluation of those facts." *Ross, supra,* 456 U.S., at 806, n. 8, 102 S.Ct., at 2163, n. 8. In short, the pervasive schemes of regulation, which necessarily lead to reduced expectations of privacy, and the exigencies attendant to ready mobility justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met.

The Court concluded with the third requirement for invoking the vehicle exception to the warrant requirement, to wit: the search must be such as the magistrate could authorize. It found that the search was reasonable because:

The DEA agents had fresh, direct, uncontradicted evidence that the respondent was distributing a controlled substance from the vehicle, apart from evidence of other possible offenses. The agents thus had abundant probable cause to enter and search the vehicle for evidence of a crime notwithstanding its possible use as a dwelling place.

It is significant that the Court did not mention that the owner was in custody or that another person might have removed the vehicle or the contraband[1] or any other fact pro or con bearing upon the issue of exigency.

Justice Stevens, dissenting, interpreted the majority opinion, in part, as follows:

The automobile exception has been developed to ameliorate the practical problems associated with the search of vehicles that have been stopped on the streets or public highways because there was probable cause to believe they were transporting contraband. Until today, however, the Court has never decided whether the practical justifications that apply to a vehicle that is stopped in transit on a public way apply with the same force to a vehicle parked in a lot near a court house where it could easily be detained while a warrant is issued.

. . . . .

In the absence of any evidence of exigency in the circumstances of this case, the Court relies on the inherent mobility of the motor home to create a conclusive presumption of exigency.

*Id.* 105 S.Ct. at 2075, 2076.

In short, *Carney* equates a lawfully parked vehicle with a vehicle that is stopped in transit on a public way and relies upon the inherent mobility of a vehicle to create a conclusive presumption of exigency. Distinctions may be made by the Court in future cases between vehicles parked in public places and elsewhere, or return to some particularized restriction on mobility but at the very least *Carney* authorizes a warrantless search of a vehicle parked in a public place, after a recent crime, providing probable cause to believe the vehicle contains contraband, without any actual likelihood that the risk of delay to obtain a warrant is high.

Since *Carney* at least five federal circuit courts have concurred in the dissenters' interpretation of the majority opinion. *See United States v. Hill,* 855 F.2d 664, 668 (10th Cir.1988); *United States v. Vasquez,* 858 F.2d 1387, 1391 (9th Cir.1988); *United States v. Bagley,* 772 F.2d 482 (9th Cir. 1985); *United States v. Paulino,* 850 F.2d 93, 94–95 (2nd Cir.1988); *United States v. Alexander,* 835 F.2d 1406, 1409–10 (11th Cir.1988); *United States v. Rivera,* 825 F.2d 152, 158 (7th Cir.1987).

In *State v. Islieb,* 319 N.C. 634, 356 S.E.2d 573 (1987), the North Carolina Su-

---

**1.** The officers had information that a person other than Defendant had also used the motor home to exchange marijuana for sex.

preme Court appears to have conformed the exigency circumstances requirement to *Carney.* The Supreme Court of Wisconsin has also followed *Carney* in a case involving the search of a vehicle lawfully parked at a tavern. *State v. Tompkins,* 144 Wis.2d 116, 423 N.W.2d 823 (1988).

Hawaii and Oregon have considered *Carney* and elected to adhere to their respective exigency requirements. *See State v. Ritte,* 68 Haw. 253, 710 P.2d 1197, 1201 (1985), and *State v. Kock,* 302 Or. 29, 725 P.2d 1285 (1986).

This Court has consistently followed the decisions of the United States Supreme Court in deciding cases involving the vehicle exception. *See e.g., Fuqua v. Armour, supra; State v. Hughes,* 544 S.W.2d 99 (Tenn.1976); and *State v. Byerley, supra.* We deem it appropriate to continue to do so, and adopt the interpretation of *Carney* stated herein, overruling all cases to the contrary.

■ In the order granting Defendant's application for permission to appeal we requested that the parties discuss in their briefs the application of *Carney* to this case, since no mention of it had been made in any of the proceedings below. Defendant contends that it is distinguishable factually, in that the officers did not have *fresh, direct uncontradicted* evidence that Defendant had broken into the Rexroads' vehicle and there was insufficient probable cause. We find no merit in that assertion.

The result is that the judgment of the Court of Criminal Appeals is affirmed and this case is remanded for the resentencing ordered by that Court. Costs are adjudged against Defendant.

DROWOTA, C.J., and COOPER, HARBISON, and O'BRIEN, JJ., concur.