# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### DECEMBER SESSION, 1997

FILED

March 24, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | No. 03C01-9701-CR-00013 |
| Appellee | ) | |
| | ) | |
| | ) | HAMILTON COUNTY |
| vs. | ) | |
| | ) | Hon. STEPHEN M. BEVIL, Judge |
| JAMIE LEE PITTMAN, | ) | |
| | ) | (Aggravated Robbery; Robbery; |
| Appellant | ) | Carrying a dangerous weapon) |

For the Appellant:

**Johnny D. Houston, Jr.**
717 Georgia Avenue
Chattanooga, TN  37402

For the Appellee:

**Charles W. Burson**
Attorney General and Reporter

**Clinton J. Morgan**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

**William H. Cox III**
District Attorney General

**Rebecca J. Stern**
Asst. District Attomey General
Suite 300, Courts Building
600 Market Street
Chattanooga, TN  37402

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

The appellant, Jamie Lee Pittman, was found guilty by a Hamilton County jury of aggravated robbery, robbery, and carrying a dangerous weapon. The trial court subsequently imposed an effective sentence of twelve years in the Department of Correction. In this appeal as of right, the appellant raises the following issues:

I. Whether the trial court erred in denying the appellant's Motion to Suppress; and

II. Whether the evidence is sufficient to sustain the appellant's conviction for aggravated robbery.

After a review of the record before us, we affirm the judgments entered by the trial court.

**Background**

On April 23, 1994, Bryant Young and Dereke Silvers, life-long friends, were preparing to travel from their home in Chattanooga to Atlanta, Georgia to attend "Freaknik," a week long gathering of students from African-American colleges in the southeast.[1] Young packed several new outfits, "a lot" of compact discs, and his nine millimeter Ruger, which had been disassembled and placed in his luggage for the journey to Atlanta. Young then left his home in his 1989 Nissan pickup truck to meet Silvers.

Before the two young men left Chattanooga, Young stopped at a convenience store to get a beer and some snack food for their trip. As Young pulled into the parking lot, he noticed a taxi cab entering the lot. The driver of the cab knew both Young and Silvers and called out to the two men. Young noticed that

---

[1]Young described Freaknik as a "little black Mardi Gras around April . . . ."

three passengers were inside the cab. He then observed two of the passengers enter the store. While Silvers remained in the truck, Young entered the store and selected his purchases. Soon thereafter, Silvers, leaving the truck unattended, went into the store. Silvers and Young then proceeded to pay for their purchases. As Young was leaving the store he observed two individuals, later identified as Brewer and Jennings, walking away with two of his bags containing personal items which had been placed in the bed of his truck. In an attempt to regain his possessions, he chased after the two. One of the fleeing thieves, Cornelius "Red Bone" Jennings, had a sawed off pump shotgun with a shirt wrapped around the barrel. Jennings pointed the weapon towards Young and forced him to lay upon the ground. The appellant approached Young, picked him up off the ground, and demanded Young's jewelry and wallet. Meanwhile, Greg "BooBoo" Brewer was taking Young's compact discs and telephone out of the cab of the truck. When Silvers finally emerged from the store, he was greeted by Jennings and his sawed off shotgun. Like Young, Silvers was robbed of his jewelry and wallet. The perpetrators, clutching their ill-gotten gains, fled the scene. Young and Silvers located a police officer nearby and reported the incident.

Detective Randy Poland obtained descriptions of the robbers from both Silvers and Young. He then prepared photo-lineups which he separately showed to both victims. Young identified both Pittman and Brewer as the perpetrators; Silvers was only able to identify Brewer from the lineup.

On April 29, 1994, at approximately 2:00 p.m., Dereke Silvers again contacted the Chattanooga Police Department. He reported that three men drove by his house in a red vehicle and pointed weapons at him. He described these men as the three men who had robbed him earlier that month; "one by the name of Jamie Pittman and the other one was "BooBoo." Silvers described the clothing his assailants were wearing, the vehicle in which the men were traveling, and also

3

described the weapons the men were carrying, *i.e.*, "semi-automatic," "like a .9 millimeter." This information was dispatched over the police radio and Detective John Carter responded to the call. Detective Carter was acquainted with "BooBoo" Brewer and the appellant.

Ten minutes after receiving this information, Detective Carter stopped at a convenience store to purchase something to drink. While inside the store, he recognized the appellant and Brewer as they entered the store. He also noticed a red vehicle, matching the description provided by Silvers, parked outside. Carter advised the two men to stop and, although familiar with them by name, asked them to identify themselves. The appellant responded truthfully while Brewer provided a false name. Carter called for backup and detained the appellant and Brewer inside the store. After backup arrived, Carter went outside to the vehicle and looked through the windows. At this point, the detective observed what appeared to be the barrel of a gun protruding from beneath the front passenger seat. Carter opened the door and retrieved the gun, a .38 Rossi revolver. Believing that the weapon provided probable cause for a more detailed search of the car, Carter looked in the glove compartment where he discovered a nine millimeter Ruger. Both weapons were loaded. At this point, the appellant and Brewer were taken into custody.

## I. Search of Appellant's Vehicle

The appellant first argues that the trial court erred in denying his motion to suppress, thereby, permitting introduction of the two pistols found in the automobile driven by the appellant. In support of this contention, the appellant asserts the well-established principle that, "warrantless searches and seizures are presumed to be unreasonable unless they fall within one of the exceptions to the warrant requirement." He contends that the search of the vehicle was executed without the benefit of a valid exception to the warrant requirement. We disagree.

4

On a motion to suppress, deference is given to the trial court to assess the credibility of the witnesses and determine issues of fact, and the prevailing party is entitled to the strongest legitimate view of the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Moreover, the trial court's findings will not be disturbed on appeal unless the evidence preponderates otherwise. Id. At the conclusion of the motion to suppress, the trial court upheld the validity of the search based upon the presence of exigent circumstances plus probable cause to justify the warrantless search. In arriving at this conclusion, the trial court found, in relevant part, as follows:

> . . . the line of cases since Chambers and Carroll basically said that if the officer has probable cause to such that he could go get a search warrant, in light of the fact that this is a movable object and it is subject to be moved and in light of the exigent circumstances, that it would be sort of an exercise in futility to require him to go back and get a search warrant, if he has probable cause to search it. . . .

> . . .I feel like that it is a valid search, it's a justifiable search as an exception to the search warrant requirement, and that is an automobile search under Carroll and Chambers v. Maroney and those other cases. . . .

Additionally, the court concluded that the possible presence of an unidentified third person at the scene, who could have driven the vehicle away or shot the officer with the weapon, justified the officer's "approaching the car to glance inside." Accordingly, the trial court opined that, once Carter observed the barrel of the weapon protruding from beneath the front seat of the car, he had probable cause to expand his search to the remainder of the vehicle, including the glove compartment.

Any warrantless search is presumptively *per se* unreasonable under the Fourth Amendment. Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130, 2135 (1993). Since warrantless searches are presumed to be unreasonable, the prosecution has the burden of establishing by a preponderance of the evidence that the search and resulting seizure were justified pursuant to one of the recognized exceptions to the warrant requirement. State v. Watkins, 827 S.W.2d 293, 295

5

(Tenn. 1992) (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2032 (1971); Hughes v. State, 588 S.W.2d 296, 301 (Tenn. 1979)). The Supreme Court of the United States has continually carved out exceptions to the warrant requirement based on the level of intrusiveness involved in the search, the expectation of privacy of the individual, and the circumstances surrounding the search. State v. White, No. 03C01-9408-CR-00277 (Tenn. Crim. App. at Knoxville, June 7, 1995).

The law is well established that, "if a car is readily mobile, [an exigency sufficient to excuse the failure to obtain a search warrant] and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more."[2] Pennsylvania v. LaBron, -- U.S. --, 116 S.Ct. 2485, 2487 (1996). See also California v. Carney, 471 U.S. 386, 105 S.Ct. 2066 (1985); Carroll v. United States, 267 U.S. 132, 155-56, 45 S.Ct. 280, 286 (1925); State v. Leveye, 796 S.W.2d 948, 953 (Tenn. 1990); State v. Julian, No. 03C01-9511-CV-00371 (Tenn. Crim. App. at Knoxville, Jul. 24, 1997); State v. Mason, No. 01C01-9509-CC-00288 (Tenn. Crim. App. at Nashville, Apr. 30, 1997); State v. Parrish, No. 01C01-9309-CC-00292 (Tenn. Crim. App. at Nashville, Nov. 16, 1995), perm. to appeal denied, (Tenn. Apr. 1, 1996). Once an officer has probable cause to believe contraband is contained in the vehicle, he may search the automobile and the containers within it. California v. Acevedo, 500 U.S. 565, 580, 111 S.Ct. 1982, 1991

---

[2]Probable cause is defined as "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." State v. Johnson, 854 S.W.2d 897, 899 (Tenn. Crim. App. 1993). In the present case, Detective Carter had been informed by Silvers, the victim of the aggravated robbery, that the perpetrators of the robbery (who had previously been identified as the appellant, Brewer, and Jennings) drove by his home in a red car pointing "semi-automatic" weapons at him. Carter then observed the appellant and Brewer pull into the parking lot of the convenience store in a red vehicle. Carter was justified in relying upon Silvers' information. Where the information is received from a citizen informant, the information is presumed reliable and the officer is not under any obligation to establish that the source is credible or that the information is reliable. See State v. Cauley, 863 S.W.2d 411, 417 (Tenn. 1993); State v. Melson, 638 S.W.2d 342, 354-55 (Tenn. 1982), cert. denied, 459 U.S. 1137, 103 S.Ct. 770 (1983). "An ordinary citizen who reports a crime which has been committed in his presence . . . stands on much different ground than a police informer." State v. Smith, 867 S.W.2d 343, 347 (Tenn. Crim. App. 1993) (citation omitted). This distinction is applicable to the present case. Detective Carter had no reason to question the credibility of Silvers, who had been the victim of a violent crime committed previously by the perpetrators. Silvers was an eyewitness to the offense. Moreover, the circumstances which developed subsequent to Carter's arrival at the convenience store corroborated Silvers report. Thus, sufficient probable cause existed for the ensuing search.

(1991). Thus, Carter's initial search of the vehicle and subsequent search of the glove compartment was proper.

Another exception to the warrant requirement also is applicable under the facts of the present case, *i.e.*, when the seized items are in "plain view" from a lawful vantage point of the searching officer. See Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993 (1968); Armour v. Totty, 486 S.W.2d 537, 540 (Tenn. 1972). The "plain view" doctrine requires proof that: (1) the objects seized were in plain view; (2) the viewer had a right to be in position for the view; and (3) the incriminating nature of the object was immediately apparent. Horton v. California, 496 U.S. 128, 136-141, 110 S.Ct. 2301, 2308-2310 (1990), overruling in part, Coolidge v. New Hampshire, 403 U.S. at 443, 91 S.Ct. at 2022; see also Minnesota v. Dickerson, 508 U.S. at 375, 113 S.Ct. at 2136-37 (citations omitted). We conclude that the circumstances surrounding the challenged search satisfy the plain view exception to the warrant requirement. First, Detective Carter had a right to be in "position for the view." The appellant's vehicle was already parked in the store's parking lot, subject to observation by anyone who cared to look. See United States v. Willis, 37 F.3d 313, 316 (7th Cir. 1994). Merely by approaching the vehicle, Carter was in a legitimate position to look through the window of the vehicle. Id. Next, Detective Carter testified that he saw, "in plain view," what appeared to be the barrel of a weapon protruding from beneath the front passenger seat of the vehicle matching the description provided by Silvers, who had, less than thirty minutes before, recounted the incident involving the appellant, Brewer, and Jennings waving guns at him from a red car. Thus, Carter's seizure of the Rossi revolver falls within the "plain view" exception to the warrant requirement.

The evidence in the record does not preponderate against the trial court's findings as to this issue. Accordingly, this issue is without merit.

7

## II. Sufficiency of Evidence

In his final issue, the appellant limits his challenge regarding the sufficiency of the evidence to his conviction for aggravated robbery. He argues that the proof fails to establish that the victim Bryant Young was placed "in fear." In support of his contention, he asserts that "Young never testified that he was in fear. Moreover, when explicitly asked the question 'how did this all make you feel,' he replied that he was angry and shocked, but never that he was in fear." Thus, the appellant contends that the State failed to satisfy an essential element of the offense of aggravated robbery. We disagree.

When a challenge is made on appeal to the sufficiency of the convicting evidence, this court must adhere to certain well-established principles. First, a jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Next, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Moreover, this court may not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Viewing the evidence under these criteria, it is this court's responsibility to affirm the conviction if the proof was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

In the present case, aggravated robbery is defined as the intentional or knowing theft of property from the person of another by violence or putting the person in fear where the robbery is accomplished with a deadly weapon.  Tenn. Code. Ann. § 39-13-401, 402 (1990).  As the language of the statute plainly provides, robbery may be accomplished through either the element of "putting the person in fear" or "by violence."  Id.; see also  State v. Nunley, No. 01C01-9309-CC-00316 (Tenn. Crim. App. at Nashville, Feb. 2, 1995).  It is abundantly clear, in this case, that the robbery was accomplished through violence.  Moreover, the fact that the victim failed to testify that he was in fear during the robbery is not determinative of the issue.  The element of either "fear" or "violence" is satisfied if the circumstances of the incident, within reason and common experience, are of such a nature as to persuade a person to part with his property against his will.  See generally State v. Thien Duc Le, 743 S.W.2d 199, 201 (Tenn. Crim. App. 1987); State v. High, No. 02C01-9312-CR-00275 (Tenn. Crim. App. at Jackson, Oct. 12, 1994).  The fact that co-defendant Jennings pointed a sawed off shotgun in the victim's face while the appellant removed the victim's rings and wallet is sufficient proof of both violence and fear.  In addition, the appellant's taking of the victim's property is sufficient to find him criminally responsible for Jennings' acts of violence. See Tenn. Code Ann. § 39-11-402(2) (1991).  This issue is without merit.

### III. Conclusion

For the forgoing reasons, the judgment of the trial court is affirmed.

_____
DAVID G. HAYES, Judge


CONCUR:



_____
DAVID H. WELLES, Judge



_____
THOMAS T. WOODALL, Judge