# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 27, 2015 Session

## STATE OF TENNESSEE v. JOHN BURLEY ALBERTS

### Appeal from the Circuit Court for Williamson County
### No. I-CR033269     Michael W. Binkley, Judge

---

### No. M2015-00248-CCA-R3-CD – Filed January 28, 2016

---

Following a jury trial, the Defendant, John Burley Alberts, was convicted of four counts of rape of a child, see Tennessee Code Annotated section 39-13-522, and received an effective sentence of one hundred years to be served at one hundred percent. On appeal, the Defendant contends (1) that the trial court erred in denying the Defendant's motion to suppress evidence obtained from a warrantless search of the Defendant's car, and (2) that evidence obtained from a laptop computer recovered from his car should have been suppressed because officers did not acquire a search warrant prior to performing a forensic analysis of the computer. Because we conclude that the search was valid under the automobile exception to the warrant requirement and that the Defendant has waived review of the second issue, the judgments of the trial court are affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Vanessa Pettigrew Bryan, District Public Defender; James L. Elkins III (at trial and on appeal), Benjamin Cody Signer (on appeal), and David Shannon Lee Christensen (at trial), Assistant District Public Defenders, for the appellant, John Burley Alberts.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Kim R. Helper, District Attorney General; and Mary Katharine White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

On March 10, 2008, a Williamson County grand jury returned an indictment charging the Defendant as follows: four counts of rape of a child (victim 1, Counts 1-4);

three counts of rape of a child (victim 2, Counts 5-7); one count of solicitation of sexual exploitation of a minor (unspecified victim, Count 8); one count of solicitation of a minor to commit rape of a child (unspecified victim, Count 9); and one count of rape of a child (victim 3, Count 10). See Tenn. Code Ann. §§ 39-13-522, -529. Subsequently, the counts were severed, and this appeal concerns only the Defendant's convictions in Counts 1-4, relating to the sexual abuse of eight-year-old H.N.[1]

On November 12, 2009, the Defendant filed a motion to suppress evidence seized from a search of his car. The Defendant argued that the search warrant obtained by law enforcement was invalid because it failed to show probable cause. The Defendant contended that the search warrant failed to establish a nexus "among the criminal activity, the place to be searched, and the items to be seized." Thus, the Defendant asserted that the search was illegal and that evidence obtained pursuant to the search—in particular, a laptop computer—should be suppressed as "fruit of the poisonous tree."[2] The trial court held a hearing on the motion on January 6, 2010.[3]

At the suppression hearing, following argument from counsel but before any proof was offered, the trial court granted the motion to suppress based solely on "the four corners" of the search warrant. The court found that the warrant was "woefully inadequate." The trial court further found that it was limited to a consideration of the validity of the warrant on its face and that it could not consider an alternative basis offered by the State that would justify the search—the automobile exception to the warrant requirement. The State disagreed, asserting that, regardless of the warrant's flaws, officers had probable cause to conduct the search of the car, and thus, a warrantless search was proper pursuant to the automobile exception. Although the trial court disagreed with the State's argument, it allowed the State to make an extensive "offer of proof" so that the State could develop a record in order to appeal the court's denial of the motion.

Detective Tameka Sanders testified that she was employed by the Williamson County Sheriff's Office ("WCSO") and that she was the lead detective on the Defendant's case. Det. Sanders began investigating the Defendant after several parents reported that the Defendant had sexually abused their children. According to Det. Sanders, the abuse was reported on January 19, 2007. Det. Sanders "pulled [the

---

[1] It is the policy of this court to utilize initials when referring to minors and rape victims.

[2] Under the "fruit of the poisonous tree" doctrine, any evidence obtained through the exploitation of an unlawful search must be suppressed. See Wong Sun v. United States, 371 U.S. 471, 488 (1963).

[3] The suppression issues were addressed by a different judge, The Honorable Jeffrey S. Bivins.

Defendant's] records" and learned that he had been previously convicted of sexual abuse of a minor female.[4]

Det. Grant Benedict, also with the WCSO, testified that he "handle[d]" registered sex offenders in the county. After learning about the Defendant's prior record from Det. Sanders, Det. Benedict searched the county's sex offender registry for the Defendant's name and discovered that the Defendant had been living in Williamson County without registering as required. Accordingly, on January 31, 2007, Det. Benedict arrested the Defendant for violating the sex offender registry. While attempting to locate the Defendant prior to his arrest, Det. Benedict called one of the Defendant's former employers, who informed Det. Benedict that the Defendant had spent a lot of time on one of the computers at work.

Timothy Pratt testified that he and the Defendant "grew up together" and that in 2007, he was living on Sweet Gum Lane in Lawrence County. He testified that the Defendant sometimes "stayed" at the house next door to his, which Mr. Pratt also owned. He recalled that the Defendant's car was "setting [sic] in [his] driveway when [he] came home one night." More specifically, the Defendant's car was located "in between" the driveway of the house where the Defendant had been staying and the driveway of Mr. Pratt's home. According to Mr. Pratt, the Defendant had already been arrested at that point, and he was not sure how the car came to be parked there. Mr. Pratt was aware of the Defendant's arrest because the Defendant was working for Mr. Pratt's brother at the time, and the Defendant was arrested at a "job site." Mr. Pratt opined that someone from the construction company moved the Defendant's car following his arrest. The car was unlocked, but the keys were with the car. Mr. Pratt locked the car and put the keys in his work truck.

Det. Sanders learned that the Defendant had recently lived in the home of A.B. and D.B., two of the parents who initially reported the abuse.[5] Det. Sanders also learned from Det. Benedict that the Defendant "had spent a large amount of time on the computer at his workplace." Therefore, she called A.B. and asked whether there was a computer in their home that the Defendant had used. A.B. confirmed that there was a computer and that the Defendant had used it. A.B. agreed to turn the computer over to Det. Sanders. When Det. Sanders collected the computer, A.B. told her that the Defendant had a laptop that he kept in the trunk of his car and that he also owned a digital camera. Det. Sanders

---

[4] The exact offense that the Defendant was convicted of is unclear from the record. However, the conviction was apparently ten years prior to the beginning of this investigation, and the Defendant served eight years in prison.

[5] Although not the subject of this appeal, A.B. and D.B. reported that the Defendant had abused two of their children, and we will utilize initials when referring to them in order to protect the identity of those victims.

testified that she believed the Defendant "was very protective of [the computer]" because "he kept it in the trunk of his car." According to Det. Sanders, A.B. told her about the computer on January 25, 2007.

Det. Sanders testified that she and Det. Benedict planned to go to the auto dealership where the Defendant had recently worked and where he apparently spent a lot of time on the computer. On February 6, 2007, the detectives drove to Lawrence County, where the dealership was located, and met with Lieutenant Denton of the Lawrence County Sheriff's Office. Det. Sanders explained that, because she and Det. Benedict did not have jurisdiction in Lawrence County, she wanted to apprise local law enforcement of the investigation as a professional courtesy. Lt. Denton accompanied the detectives to the automobile dealership. The owner of the dealership, Jimmie Pennington, consented to a search of the workplace computer used by the Defendant. Det. Benedict conducted a "pre-search" of the computer, in which all of the images contained on the computer flashed on the screen in quick succession. Det. Benedict testified that the pre-search revealed "a variety of images of obviously underage[] girls in various states of undress and sexual positions and performing sex acts." Det. Sanders estimated that the pornographic images numbered in the "[hundreds] if not thousands." Additionally, Det. Sanders thought that she recognized one of the victims in a picture.[6] Mr. Pennington denied having any knowledge of the pornographic images.

After viewing the pictures on the workplace computer, Lt. Denton left to get a search warrant. Mr. Pennington agreed to let the detectives take the computer for further testing. Detectives Sanders and Benedict then went to Sweet Gum Lane "to take some pictures" at the house where the Defendant had been staying. When they arrived, they found the Defendant's car in the driveway. The detectives took pictures and attempted to talk to the Mr. Pratt, but no one was home at the time. The detectives left and "kind of drove around," "went and got lunch," and then went back to Sweet Gum Lane "later in the evening." This time, there was a car in the Pratts' driveway, and the detectives were able to talk to Erica Pratt, Mr. Pratt's wife. Ms. Pratt told Det. Sanders that the Defendant "liked taking pictures of the kids" with his camera, but he would ignore her son "and photograph the girls only."

Ms. Pratt told the detectives that her husband had the keys to the Defendant's car, but he was not home at the time. Approximately one hour later, Lt. Denton arrived with the search warrant. Det. Sanders testified that she never actually saw the search warrant. Also, she believed that she had probable cause to search the Defendant's car without a warrant at that point but chose to defer to Lt. Denton and wait for a warrant because she and Det. Benedict were in his jurisdiction. Mr. Pratt arrived home around the same time that Lt. Denton arrived with the warrant, and Mr. Pratt gave the car keys to the officers.

---

[6] Det. Sanders had previously interviewed two of the victims, both daughters of A.B. and D.B.

-4-

A laptop and digital camera were found in the trunk of the Defendant's car. A subsequent analysis of the laptop revealed images depicting the Defendant and H.N. engaged in various sex acts, which resulted in the indictments for four counts of rape of a child in this case.

On February 8, 2010, the trial court entered an order granting the Defendant's motion to suppress. The court concluded that the search warrant did "not establish probable cause . . . [or] a sufficient nexus as required." The court found that it was "compelled to review the search warrant on the four corners of the warrant only." Therefore, the trial court did not consider the alternate basis for the search offered by the State—that it was a valid warrantless search pursuant to the automobile exception.

On March 8, 2010, the State filed a motion in the trial court to allow an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9. The State asserted that the trial court had erred by granting the Defendant's motion to suppress. Specifically, the State argued that the trial court erred when it concluded that it was limited to considering the search warrant and that it could not consider whether an exception to the warrant requirement applied. The trial court granted the State's motion on May 25, 2010, and this court granted the State's application for interlocutory appeal on July 15, 2010.

On appeal, a panel of this court concluded that the trial court should have considered the State's theory that, regardless of the validity of the search warrant, the search of the Defendant's car could be justified under one of the exceptions to the warrant requirement. See State v. Alberts, 354 S.W.3d 320, 323 (Tenn. Crim. App. 2011). Thus, the case was remanded for the trial court to consider the validity of the warrantless search of the Defendant's car. Id. at 323-24.

On remand, the trial court reversed its earlier decision and denied the Defendant's motion to suppress, finding that the automobile exception justified the warrantless search of the Defendant's car. The court stated that "[a]lthough the affidavit for the warrant failed to include a substantial portion" of the evidence known to officers at the time of the search, the officers did have probable cause to conduct the search.

The case proceeded to trial in June 2013, and the bulk of the direct evidence against the Defendant consisted of images retrieved from the laptop computer. After seizing the laptop from the Defendant's car, Det. Sanders sent it to the Tennessee Bureau of Investigation ("TBI") for forensic analysis. The TBI subsequently submitted a report to Det. Sanders suggesting that, based on several pictures found on the laptop, there might be "local victims." Additionally, although the digital camera was never subjected to forensic analysis, the TBI was able to determine that many of the pictures on the laptop had been taken with and uploaded to the computer from a Kodak EasyShare Camera,

which matched the type of camera taken from the Defendant's trunk. Det. Sanders isolated several pictures of a young girl engaged in various sex acts with the Defendant whom she believed might be a local victim and began trying to identify her.

Because the Defendant had previously lived with them, Det. Sanders decided to show pictures of one of the victims to A.B. and D.B. Det. Sanders printed off pictures of the victim, "cut the bad parts out," and showed them to A.B., who was able to identify the girl in the pictures as H.N. A.B. told Det. Sanders that H.N. was the daughter of K.N., who was the Defendant's brother's girlfriend. Also, from viewing the background of the pictures, A.B. was able to determine that the pictures had been taken at the home the Defendant had shared with herself, D.B., and their young children. According to A.B., H.N. had visited their home several times.

A jury convicted the Defendant as charged in Counts 1-4 with four counts of rape of a child. Following a sentencing hearing, the trial court sentenced the Defendant to consecutive sentences of twenty-five years on each count, resulting in a total effective sentence of one hundred years to be served at 100%. It is from these judgments that the Defendant now appeals.

## ANALYSIS

On appeal, the Defendant contends that the trial court erred in denying his motion to suppress evidence recovered pursuant to a warrantless search of his car. In particular, the Defendant argues that his car was not "readily mobile" at the time of the search and that officers lacked probable cause to search his vehicle and, thus, the automobile exception does not apply. Alternatively, the Defendant argues that even if the warrantless search of his vehicle was legal, the subsequent analysis of the laptop computer[7] amounted to a warrantless search to which no exception to the warrant requirement applies. In response, the State avers that the search of the Defendant's car was proper under the automobile exception, which requires only probable cause to search without any separate showing of exigency. The State further responds that the Defendant has waived the issue regarding the search of the laptop because he raised it for the first time in his motion for new trial.

### I. Standard of Review

A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Binette, 33 S.W.3d 215, 217

---

[7] The Defendant includes the digital camera recovered from his trunk in the challenged search; however, the trial testimony is clear that the camera was never analyzed by the TBI, and the only incriminating images introduced were recovered from the laptop.

(Tenn. 2000). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Both proof presented at the suppression hearing and proof presented at trial may be considered by an appellate court in deciding the propriety of the trial court's ruling on a motion to suppress. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998); State v. Perry, 13 S.W.3d 724, 737 (Tenn. Crim. App. 1999). However, the prevailing party "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence." Odom, 928 S.W.2d at 23. Furthermore, an appellate court's review of the trial court's application of law to the facts is conducted under a de novo standard of review. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001) (citations omitted).

### B. Search of the Defendant's Vehicle

The Defendant first posits that the search of his car was illegal and that any evidence seized as a result should have been suppressed. The Defendant argues that the automobile exception does not apply because his car "was not sufficiently mobile to justify a warrantless search" and the officers lacked probable cause.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. Any "warrantless search or seizure is presumed [to be] unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998).

One such exception to the general rule requiring a warrant is the "automobile exception," which permits an officer to search an automobile when there is probable cause to believe that the vehicle contains contraband. Carroll v. United States, 267 U.S. 132, 149 (1925). The United States Supreme Court has explained that the justification for the automobile exception is two-fold: (1) it is often impractical for officers to obtain search warrants due to the inherent mobility of automobiles; and (2) an individual's expectation of privacy is reduced in an automobile. Pennsylvania v. Labron, 518 U.S. 938, 940 (1996); California v. Carney, 471 U.S. 386, 392-93 (1985). Although early cases applying the automobile exception analyzed whether both probable cause and exigent circumstances existed to justify a warrantless search, the United States Supreme Court has since eliminated the exigency analysis. See Maryland v. Dyson, 527 U.S. 465, 466-67 (1999) ("[U]nder our established precedent, the 'automobile exception' has no separate exigency requirement."). Our supreme court adopted this approach in State v. Saine, 297 S.W.3d 199, 207 (Tenn. 2009). Thus, when an officer has probable cause to

believe that an automobile contains contraband, one of two courses of action is constitutionally reasonable: the officer may seize the automobile and obtain a search warrant or instead may search the automobile immediately. Chambers v. Maroney, 399 U.S. 42, 52 (1975).

First, we address the Defendant's argument that the automobile exception does not apply because his car was not "sufficiently mobile" at the time of the search. In support of this argument, the Defendant points out that he was incarcerated at the time that the search was carried out and that the car was parked at a private residence. Thus, he concludes, the officers were required to obtain a valid warrant before conducting the search.

In differentiating between the particular circumstances of this case and other cases where the automobile exception has been applied, the Defendant directs us to State v. Leveye, wherein our supreme court drew a distinction between "fluid" and "stable" situations involving vehicles. 796 S.W.2d 948, 951 (Tenn. 1990). In that case, the court recognized that where "a parked car presents a 'fluid situation' it is probably reasonable to search without a warrant, but if 'stable' a warrant would be required." Id. However, it is important to note that the Leveye court discussed this distinction when analyzing whether exigent circumstances existed. Id. at 950-51. In doing so, the court was relying upon a 1976 Tennessee Supreme Court case that espoused what has now become an outdated view: that there is no exigency per se in the inherent mobility of cars. Id. (citing Fuqua v. Armour, 543 S.W.2d 64, 67 (Tenn. 1976)).

We say outdated because in Saine, our supreme court, like the United States Supreme Court in Dyson, was unequivocal in its holding that "the automobile exception does not require a separate finding of exigency under the Tennessee Constitution." 297 S.W.3d at 207. Rather, the general trend has been toward an emphasis on the inherent mobility of vehicles without regard to the particular circumstances of a case. See 3 Wayne R. LaFave, Search & Seizure, § 7.2(b) (5th ed.) (noting that courts now routinely "uphold warrantless searches with virtually no inquiry into the facts of the particular case, reasoning that whether any kind of exigent circumstances claim could plausibly be put forward is totally irrelevant").

Indeed, even before Saine, a panel of this court rejected the idea that "the United States Supreme Court's decision in [Labron], signal[ed] a return to 'some particularized restriction on mobility.'" State v. Jose Roberto Ortiz, No. M1998-00483-CCA-R3-CD, 1999 WL 1295988, at *15 & n.4 (Tenn. Crim. App. Dec. 30, 1999) (noting that it did not "believe the Supreme Court intended the phrase 'readily mobile' to be synonymous with 'imminently mobile.'"). The Ortiz court explained that

[w]hile the mobility of automobiles is part of the reasoning behind [the automobile exception], the question is not . . . whether the car is likely to be driven off; the question is whether probable cause that contraband is within the vehicle supports a search within the scope that a warrant would have authorized. It is the characteristic mobility of all automobiles, not the relative mobility of a car in a given case, . . . which allows for warrantless searches when probable cause exists.

Ortiz, 1999 WL 1295988, at *15 (citing United States v. Perry, 925 F.2d 1077, 1081 n.4 (8th Cir. 1991)). Therefore, a full ten years before our supreme court's Saine decision, the Ortiz court had already rejected the idea that the United States Supreme Court's decisions left open the possibility of a distinction "between vehicles parked in public places and elsewhere or [a] 'return to some particularized restriction on mobility.'" Ortiz, 1999 WL 1295988, at *15 (citing Leveye, 796 S.W.2d at 952-53).

Additionally, while the Defendant asserts that the Leveye court's distinction was more recently cited with approval in State v. Jason Paul Sherwood, No. M2005-01883-CCA-R3-CD, 2007 WL 189376, at *10 (Tenn. Crim. App. Jan. 26, 2007), perm. app. denied (Tenn. May 14, 2007), we note that Sherwood was decided by this court two years before our supreme court explicitly eliminated the exigency requirement. Therefore, even if there was some life left in the distinction between fluid and stable situations involving vehicles that was recognized in Leveye, it does not survive in light of our supreme court's decision in Saine. Accordingly, the Defendant's argument that his car was not readily mobile within the meaning of the automobile exception is without merit.

Next, we must determine whether probable cause existed justifying the warrantless search of the Defendant's car. The Defendant contends that although the officers may have had "good cause to continue investigating [him]," they did not have the probable cause necessary to justify a warrantless search of his vehicle. Further, the Defendant argues that "even after the officers discovered child pornography" on his work computer, "they had no information indicating that any evidence relating to the child rape case" would be found on the laptop.

"Probable cause is a flexible, common-sense standard," Texas v. Brown, 460 U.S. 730, 742 (1983), which generally requires "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." State v. Johnson, 854 S.W.2d 897, 899 (Tenn. Crim. App. 1993). Additionally, we note that with regard to the automobile exception, "[t]he scope of a warrantless search based on probable cause is no narrower— and no broader—than the scope of a search authorized by a warrant supported by probable cause. Only the prior approval of the magistrate is waived; the search otherwise is as the magistrate could authorize." United States v. Ross, 456 U.S. 798, 823 (1982).

Det. Sanders testified that she initiated an investigation of the Defendant after receiving reports that he had sexually abused several children. Prior to the search of the Defendant's car, Det. Sanders learned that the Defendant had a laptop computer and digital camera which he typically kept in the trunk of his car. Also, Detectives Sanders and Benedict found "hundreds if not thousands" of pornographic images of minor females on a computer located at the Defendant's workplace, including an image which Det. Sanders believed depicted a local victim. When the detectives spoke with Ms. Pratt, she told them that the Defendant liked to take pictures of young girls. According to Det. Sanders, she felt that she had probable cause to search the Defendant's vehicle without a warrant but waited for Lt. Denton to procure the warrant because she was in his jurisdiction.

From these facts, we conclude that the detectives had probable cause to search the Defendant's car for a laptop, which they believed contained child pornography and possibly evidence of the Defendant's sexual abuse of local victims. Here, contrary to the Defendant's assertion, it is irrelevant that the Defendant was initially being investigated for rape of a child and not child pornography. Through the course of an investigation into the child sexual abuse allegations, the detectives developed probable cause that they would find evidence of child pornography on the Defendant's laptop. We have located no authority, and the Defendant has provided none, that would disallow a search supported by probable cause where an investigation into one crime provides probable cause that evidence of another crime will be found in a particular place. Consequently, there was sufficient probable cause to support a warrantless search of the Defendant's vehicle, and this issue is without merit.

## B. Search of the Laptop Computer

Next, the Defendant contends that, even if the automobile exception authorized the warrantless search of his vehicle, officers should have secured a search warrant before conducting a forensic analysis of the laptop. The Defendant argues that "[t]he search of a computer or other electronic device is a search separate from the search that uncovers the device." The State responds that the Defendant has waived review of this issue because he made this argument for the first time in his motion for new trial.

Prior to trial, the Defendant filed a motion to suppress evidence obtained from the search of his vehicle. In support of that motion, he argued that the search warrant obtained was invalid and that the laptop computer in particular should be suppressed as fruit of the poisonous tree. The motion to suppress specifically stated that the search of the vehicle "resulted in [the] seizure of a computer." (Emphasis added). Although the Defendant's motion was initially granted, the trial court reversed its decision following an interlocutory appeal to this court. The Defendant did not file any other motions to suppress and, importantly, did not argue that a search warrant was required before police

searched the laptop itself until his motion for new trial.  In fact, up until the motion for new trial, the Defendant's contention had always been that the evidence obtained from the laptop computer should have been suppressed because of its connection to the alleged illegal search of the car—he had never before asserted that the subsequent forensic analysis of the laptop was a separate search wholly removed from the search of the car, therefore requiring a warrant.

A motion to suppress evidence must be made before trial.  See Tenn. R. Crim. P. 12(b)(2)(C).  "The failure to file a pretrial motion to suppress constitutes a waiver unless good cause for the failure to raise the matter pretrial is timely shown."  State v. Zyla, 628 S.W.2d 39, 41 (Tenn. Crim. App. 1981); see Tenn. R. Crim. P. 12(f).  In this case, when denying the motion for new trial, the trial court specifically found that the Defendant had waived this issue because he raised it for the first time in his motion.  Nevertheless, on appeal, the Defendant fails to offer any reason why the issue should not be treated as waived.  An argument that evidence from the laptop should have been suppressed as fruit of the poisonous tree is not the same as a claim that a search warrant should have been obtained after the laptop was seized but before a forensic analysis was conducted.  Therefore, the proper course would have been for the Defendant to challenge the search of the laptop in a pretrial motion to suppress.  Accordingly, the Defendant is not entitled to review of this issue.

## CONCLUSION

Based on the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-11-