IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 8, 2005 Session

## STATE OF TENNESSEE v. MIGUEL GARCIA

**Appeal from the Criminal Court for Hamblen County**
**No. 02CR192     James E. Beckner, Judge**

---

**No. E2004-01698-CCA-R3-CD - Filed March 28, 2005**

---

A Hamblen County Criminal Court Jury convicted the defendant, Miguel Garcia, of possession of more than three hundred grams of cocaine with the intent to deliver, a Class A felony, and the trial court sentenced him as a Range I, standard offender to twenty-two years in the Department of Correction. The defendant appeals, claiming that the trial court erred in denying his motion to suppress and that his sentence is excessive. We affirm the defendant's judgment of conviction, but we modify his sentence under the rule announced in Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), from twenty-two years to twenty years.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part,**
**Sentence Modified**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. C. MCLIN, JJ., joined.

Greg W. Eichelman, District Public Defender, and Ethel P. Rhoades, Assistant Public Defender, for the appellant, Miguel Garcia.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; Jonathan Holcomb, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Hamblen County Grand Jury indicted the defendant with the offense of possession of cocaine with intent to deliver in violation of T.C.A. § 39-17-417(a)(4), (j)(5). At the trial, the jury found the defendant guilty as charged. On appeal[1], the defendant claims that the search of his vehicle, which revealed the presence of cocaine, violated his rights guaranteed by the Fourth Amendment to the United States Constitution and that his sentence is excessive under both state and

---

[1]This appeal results from the trial court's granting a delayed appeal as post-conviction relief.

federal law. The state argues that the search of the defendant's car did not violate his constitutional rights and that his sentence is proper.

## I. MOTION TO SUPPRESS

The defendant contends that because his car was immediately surrounded by law enforcement officers when he was stopped, no exigent circumstances existed to justify a warrantless search. The state argues that probable cause existed to believe the defendant was in possession of cocaine and that exigent circumstances existed to search the car because of its inherent mobility. We agree with the state.

At the motion to suppress hearing, Morristown Police Department (MPD) Detective Sergeant Dan Cox, the head of MPD's narcotics and vice unit, testified he received a tip from a confidential informant in December of 2001 that the defendant was trafficking in narcotics. He said that based upon this tip, officers of his unit set up a surveillance of the defendant. He said the surveillance corroborated some of the information the informant had given him, namely, the fact that the defendant was frequently receiving packages from FedEx and UPS, the types of automobiles the defendant was using, the way the defendant was spending his time during the day, and the people with whom the defendant was associating. He said that in February 2002, he received information from law enforcement officers from another state, whom and which he declined to name because of an ongoing investigation, that the defendant was a narcotics trafficker. He said this information corroborated the information which he received from the informant and the information gleaned as a result of the surveillance.

Detective Cox testified that in March 2002, he received information from another informant that Greg Sconyers, who owned a house in the Brentwood neighborhood of Morristown, was trafficking in cocaine and marijuana. He said this information resulted in his unit setting up surveillance of Mr. Sconyers' house. He said that on April 22, 2002, individuals with prior drug-related convictions arrived at the Sconyers' house. He said that when the first individual, Ralph Peebles, Jr., left the house in his car, officers from his unit stopped him. He said a resulting search uncovered the presence of cocaine and marijuana. He said that he immediately began questioning Mr. Peebles and that Mr. Peebles confessed to buying cocaine from another individual at the Sconyers' house. He said that as Mr. Peebles was confessing, the other individual drove by the scene and that his officers stopped the other individual. He said the resulting search uncovered the amount of money, $6,000.00, that Mr. Peebles said he paid for the drugs. Detective Cox said he went to Mr. Sconyers' house and confronted him with this information. He said Mr. Sconyers agreed to cooperate with law enforcement by arranging to have the defendant, who was his supplier, deliver a kilogram of cocaine to his house the next day. Detective Cox testified that he was not present when Mr. Sconyers called the defendant but that Mr. Sconyers called him immediately after speaking to the defendant and told him the defendant would arrive at his house in twenty minutes, driving an extended cab truck. He said Mr. Sconyers told him the defendant would have the kilogram of cocaine with him.

Detective Cox testified that approximately twenty minutes later, the defendant approached Mr. Sconyers' house in his truck, which matched the description provided by Mr. Sconyers. He said that his officers had previously set up surveillance of the subdivision and that when he was told the defendant had arrived, he ordered Officer Richardson to stop the defendant. He said that while Officer Richardson detained the defendant, another officer walked a drug dog around the car and that the drug dog alerted to the presence of illegal drugs. He said that Officer Richardson attempted to obtain the defendant's consent to search but that the defendant refused. He said that he asked the defendant for a key to the bed of his truck, that the defendant said he did not have a key, that a search of the defendant revealed a key, and that his officers searched the truck, revealing the presence of a kilogram of cocaine. Detective Cox said he used "the dog search as a tool of finding drugs [i]n the car, not as probable cause to search the car."

On cross-examination, Detective Cox acknowledged that his officers had the defendant's truck blocked. He also acknowledged that Officer Richardson had detained the defendant and that the defendant was not free to leave. Morristown Police Detectives Tony Richardson and Phil Hurst also testified but their testimony was merely cumulative to that of Detective Cox.

The defendant testified that when he arrived at Mr. Sconyers' house, he was immediately stopped by law enforcement personnel, one of whom approached his truck with a pistol drawn and the other with a shotgun. He said that the officers' cars had him blocked and that he could not have fled. He said that the officers asked him to consent to a search and that he declined. He said that an officer ran a drug dog around his truck, that the dog did not alert, and that the officers searched his truck anyway. After listening to the evidence presented, the trial court denied the defendant's motion to suppress finding that probable cause existed to stop and search the defendant's truck based upon the automobile exception to the general warrant requirement.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. The application of the law to the facts as determined by the trial court is a question of law which is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "'article 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment.'" State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting Sneed v. State, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968)). The analysis of any warrantless search must begin with the proposition that such searches are per se unreasonable under the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution. This principle against warrantless searches is subject only to a few specifically established and well-delineated exceptions. See Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967); State v. Tyler, 598 S.W.2d 798, 801 (Tenn. Crim. App. 1980). Before the fruits

of a warrantless search are admissible as evidence, the state must establish by a preponderance of the evidence that the search falls into one of the narrowly drawn exceptions to the warrant requirement. See State v. Shaw, 603 S.W.2d 741, 742 (Tenn. Crim. App. 1980). For instance, a warrant is not needed if an officer has probable cause to believe that a vehicle contains contraband and exigent circumstances require an immediate search. Carroll v. United States, 267 U.S. 132, 155-56, 45 S. Ct. 280, 286 (1925); accord State v. Leveye, 796 S.W.2d 948 (Tenn. 1990). "Exigent circumstances exist when a vehicle is moving on a public highway and it is impracticable to obtain a search warrant but do not exist after the vehicle has completed its journey and is at rest on private premises." Id. (quoting Fuqua v. Armour, 543 S.W.2d 64, 66 (Tenn. 1976)); see also Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S. Ct. 2485, 2487 (1996) (holding that an automobile's "ready mobility" is "an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear"). To decide whether the search conducted in this case meets this exception, we must determine whether the arresting officers had probable cause to believe that the car the defendant was driving contained contraband.

If the information upon which probable cause is based is not of the officers' personal knowledge, but is received from an informant, probable cause under our state constitution is determined by the application of the Aguilar-Spinelli two-pronged test. State v. Jacumin, 778 S.W.2d 430, 431 (Tenn. 1989). The test requires the state to establish a factual basis for the information provided and the veracity of those supplying the information. Id. The veracity prong may be satisfied by establishing an informant's inherent credibility or by establishing the reliability of the information. Spinelli v. United States, 393 U.S. 410, 415, 89 S. Ct. 584, 588 (1969); Aguilar v. Texas, 378 U.S. 108, 115, 84 S. Ct. 1509, 1514 (1964). However, any deficiency in the informant's information under this two-prong test may be overcome by independent police corroboration. Jacumin, 778 S.W.2d at 436.

In the present case, we note that Mr. Sconyers was under investigation from members of the MPD for trafficking in cocaine and marijuana. He told the investigators that the defendant was his supplier, that he had talked to the defendant about buying a kilogram of cocaine, and that the defendant was delivering it to his house. This satisfies the basis of knowledge prong. Concerning the veracity prong, the probable cause to stop and search the defendant's truck was based not only upon Mr. Sconyers' information but also upon the information revealed during the course of the investigation of the defendant. Additionally, Mr. Sconyers' information concerning the timing and method of the defendant's delivery of cocaine was corroborated before the officers stopped the defendant's truck. Under these circumstances, we conclude that probable cause existed to stop and search the defendant's truck. The defendant is not entitled to relief on this issue.

## II. EXCESSIVE SENTENCE

The defendant contends that his sentence is excessive under state law and the rule announced in Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004). The state argues that the defendant's sentence is proper under state law and that he has waived any Blakely issue. We conclude that the

trial court's enhancement of the defendant's sentence violated his right to trial by jury and accordingly reduce his sentence to twenty years, the presumptive minimum in the range.

No one testified at the sentencing hearing. After considering the arguments of counsel and the presentence report, the trial court found that the defendant was a leader in the commission of the offense, and accordingly, enhanced his sentence from twenty years to twenty-two years. See T.C.A. § 40-35-114(3). The trial court found no applicable mitigating factors. Cf. T.C.A. § 40-35-113.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

The range of punishment for a Range I defendant is fifteen to twenty-five years for a Class A felony. T.C.A. § 40-35-112(a)(1). Unless there are enhancement factors present, the presumptive sentence to be imposed is the midpoint in the range for a Class A felony. T.C.A. § 40-35-210(c). Our sentencing act provides that the trial court is to increase the sentence within the range based on the existence of enhancement factors and then reduce the sentence as appropriate for any mitigating

factors. T.C.A. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. T.C.A. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

The defendant asserts that the trial court erred by not reducing his sentence to fifteen years, the minimum in the range. However, he provides no authority for the proposition that the trial court erred, nor does he state which factor in mitigation the trial court should have applied. The trial court's refusal to apply factors in mitigation was not error.

The defendant also asserts that the trial court violated his constitutional right to trial by jury when it enhanced his sentence based upon its application of enhancement factor (3), which was not found by a jury beyond a reasonable doubt or admitted by the defendant. Blakely specifies that other than prior convictions, any facts not reflected in the jury's verdict or admitted by the defendant used to increase a defendant's punishment above the presumptive sentence must be found by the jury, not the trial court. 542 U.S. at __, 124 S. Ct. at 2537. When the trial court enhanced the defendant's sentence by applying factor (3), that the defendant was a leader in the commission of the offense, it violated his right to trial by jury. We conclude this error was not harmless beyond a reasonable doubt. See State v. Chester Wayne Walters, No. M2003-03019-CCA-R3CD, White County, slip op. at 23-25 (Tenn. Crim. App. Nov. 30, 2004). We modify the defendant's sentence from twenty-two years to twenty years.

Based on the foregoing and the record as a whole, we affirm the defendant's conviction but modify his sentence from twenty-two years to twenty years.

 

_____
JOSEPH M. TIPTON, JUDGE