# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 2, 2009

## STATE OF TENNESSEE v. NATHANIEL RICHARDSON

**Appeal from the Criminal Court for Shelby County**
**No. 05-04653     James M. Lammey, Jr., Judge**

**No. W2008-01652-CCA-R3-CD  - Filed February 11, 2010**

Appellant, Nathaniel Richardson, pled guilty to second degree murder in Shelby County and received a twenty-year sentence. At the guilty plea hearing, Appellant reserved the following certified questions of law for appeal pursuant to Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure:

> 1) Whether the trial court erred by denying [Appellant's] motion to suppress all the evidence taken from the trunk of the car that was seized by the police on September 13, 2004? Whether the seizure of the car from the parking lot where [Appellant] worked in the absence of a search warrant violated the U.S. Const. amend. IV and amend. XIV and Art. 1 § 7 and § 8 of the Tennessee Constitution and in violation of Rule 41 of the Tennessee Rules of Criminal Procedure; thereby[ ]  requiring that the evidence taken from the trunk be suppressed? A search warrant was later signed on September 15, 2004[,] and the vehicle was searched.

> 2) Whether the trial court erred by determining that [Appellant] was legally competent to stand trial.

We determine that the trial court properly denied the motion to suppress where  officers had probable cause to seize Appellant's car.  We decline to address Appellant's remaining arguments regarding his statements to police, detention by police, and validity of the search warrant as they were not presented in the certified questions presented.  Further, we determine that the issue regarding Appellant's competency is not dispositive and, therefore, not a proper certified question.  Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Phyllis Aluko, Assistant Public Defender, Memphis, Tennessee, for the appellant, Nathaniel Richardson.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel W. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and David Zak, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

Appellant was indicted for first degree murder by the Shelby County Grand Jury on July 14, 2005. Appellant subsequently filed a motion to suppress the evidence seized as a result of the "unlawful" search of a Chevrolet Lumina because no warrant existed at the time the vehicle was seized, the officer who was issued a subsequent search warrant was not present at the search and did not secure any of the collected items, there was no copy of the warrant at the site of the search, and the car was stored in a location that was not secure and safe from outside tampering. The trial court held a hearing on the motion to suppress.

At the hearing, Sergeant Anthony Mullins testified that he was assigned to investigate the death of Kenneth Miller, Jr. The victim's body was found in a vacant house in Memphis on September 9, 2004. The victim had been stabbed multiple times before being set on fire.

Sergeant Mullins explained that during the investigation, he learned that Appellant was the last person to be seen with Miller while the victim was alive. Appellant gave Miller a ride in a white Chevrolet Lumina the night before Miller's body was discovered. On September 13, 2004, Sergeant Mullins and his partner, Sergeant Doreen Shelton,[1] located Appellant at his place of employment, Super Value grocery store. A white Chevrolet Lumina was parked in the front of the store.

Appellant agreed to cooperate with authorities and went with Sergeants Mullins and Shelton to the police department to discuss the case. Appellant was advised of his *Miranda* rights and signed a waiver. During the discussions, Appellant informed the officers that he possessed an eleventh grade education. The officers, however, determined that Appellant had difficulty reading some of the advice of rights form, so the form was read aloud to

---

[1] Sergeant Shelton was later promoted to Lieutenant. For the sake of clarity, we will refer to her as Sergeant Shelton, her status at the time of the proceedings herein.

Appellant. The interview lasted approximately six hours, during which Appellant was offered food and drink. Appellant refused these offers but requested and received a bathroom break.

Appellant gave a statement in which he admitted that he gave Miller a ride in his Chevrolet Lumina for one or two blocks. At that time, the victim got out of the car and got into another car with two black men. Appellant was not under arrest at the time he gave the statement but during the course of the interview, Sergeant Mullins decided to arrest Appellant and place him under arrest on a "48-hour hold" based on the fact that he admitted to giving Miller a ride and was the last person seen with Miller alive. Sergeant Mullins also felt that Appellant was "vague" on some of the details and went "back and forth in his explanation of what happened" as far as whether Miller was going to give Appellant money in exchange for the ride and the amount of money he would provide to Appellant for the ride.

Sergeant Mullins left the police station at one point during the interview to take a look at Appellant's car. Sergeant Mullins suspected that Appellant's car had been used to transport the victim's body because they had determined in the course of the investigation that the victim was not killed at the location where the body was found. Appellant gave the keys to the car to Sergeant Mullins when he was told that the car would be towed. Sergeant Mullins looked in the windows but could not see everything inside the car because "[t]here was some clothing or something that was obstructing the rear seat and floorboard of the car." Sergeant Mullins decided to tow the car because he "could not see everything in that compartment."

During the interview, Appellant indicated that other people had access to the car. The car was actually registered to someone other than Appellant and "another individual had received a ticket in that vehicle." Out of concern of preserving evidence, the car was towed to the crime scene office, a garage-like facility within a larger building.

Appellant was released from arrest at the expiration of the forty-eight hour hold, prior to the issuance or execution of the search warrant.

A search warrant was issued on September 15, 2004. Sergeant Mullins directed forensic scientist Paulette Sutton and Sergeant Shelton to begin the search of the vehicle in his absence. Sergeant Mullins appeared at the scene of the search about thirty minutes after the search began. He saw the evidence that was recovered from the trunk of the car, which included: a knife with a serrated blade, a box cutter, a white t-shirt, a pair of blue jeans, a red plastic gasoline container, and a piece of paper with burn marks on it. When lab reports

indicated that the victim's blood was on the t-shirt and jeans found in Appellant's car, he was re-arrested and ultimately indicted for the victim's death.

The trial court denied the motion to suppress at the conclusion of the hearing. The transcript reflects the trial judge's decision to deny the motion to suppress, although the appellate record contains no entry of an order denying the suppression motion. Specifically, the trial court ruled that the seizure of the car was "reasonable under the [F]ourth [A]mendment" and was based on probable cause. The trial court found that the officers had evidence that Appellant was the last person seen with the victim while he was alive and suspected that the victim had been transported in Appellant's car from the murder site to the location where the body was found. Further, the trial court determined that the fact that other people had access to the car supported the decision to seize the car.

Subsequently, the trial court had several hearings in early 2008 to determine Appellant's competency to stand trial. Appellant was evaluated by multiple doctors prior to the hearing and had spent some time as a patient in a mental health facility prior to the hearings. At least three of the doctors who evaluated Appellant reported that Appellant was "malingering" or feigning mental illness. One of the doctors reported that Appellant was depressed and "phase[d] in and out of competence" but could return to competence with treatment. The majority of the doctors concluded, however, that Appellant exhibited some form of mental illness but was competent to stand trial at that time. The trial court ultimately determined that Appellant was competent.

In July of 2008, Appellant filed a petition to enter a guilty plea. At the guilty plea hearing, Appellant agreed to plead guilty to second degree murder in exchange for a twenty-year sentence. At the guilty plea hearing, counsel for the State informed the trial court that, had the case gone to trial, the proof would have established that:

[O]n September 9th, 2004, Kenneth Miller, Jr. was found inside a vacant house at 869 North Third Street.

Homicide began investigating the case. Mr. Miller was the victim of a stab wound. He suffered numerous stab wounds, and then after dying, his body was burned. This did not happen at the location of the abandoned house, but he was transported there after death.

At that point, officers were able to investigate the case; they began talking to witnesses and friends of the victim. They came upon a person they now know to be [Appellant] who was the last known person to see the victim alive. They were able to establish that he was the last person to see him alive.

-4-

Through their investigation, they developed enough evidence for a search warrant. They executed that search warrant on his vehicle. When they went into his vehicle, in the trunk of his vehicle, they found what appeared to be two box cutters and a knife with blood on them. That did not turn out to be the case. There was no blood on them. They were all clean. They were actually - it was actually paint.

They also found a T-shirt and jeans that did have blood on them, and those came back to the victim through DNA analysis that was done days later. Based on the knives, based on the clothing, based on a third factor - that being a gas can in the back of the trunk along with accelerant on the T-shirt and jeans, the state had a circumstantial case to go forward with the fact that [Appellant] was, in fact, the one that last saw the victim, . . . , and did participate in his killing.

The trial court accepted the guilty plea and the parties agreed to reserve the following certified questions for appeal:

1) Whether the trial court erred by denying the [Appellant's] motion to suppress all the evidence taken from the trunk of the car that was seized by the police on September 13, 2004? Whether the seizure of the car from the parking lot where [Appellant] worked in the absence of a search warrant violated the U.S. Const. amend. IV and amend. XIV and Art. 1 § 7 and § 8 of the Tennessee Constitution and in violation of Rule 41 of the Tennessee Rules of Criminal Procedure; thereby[ ] requiring that the evidence taken from the trunk be suppressed? A search warrant was later signed on September 15, 2004[,] and the vehicle was searched.

2) Whether the trial court erred by determining that [Appellant] was legally competent to stand trial.

*Analysis*

*Search and Seizure*

On appeal, Appellant argues that his "warrantless arrest" was not based on probable cause. Further, Appellant contends that his statements to officers and the evidence seized from the car were the result of his warrantless arrest. Appellant also argues that the search of his car was illegal because the police lacked probable cause to seize it without a warrant. Finally, Appellant contends that the search warrant was invalid because there was insufficient

probable cause to support the issuance of the warrant and the warrant was executed illegally. The State counters that the record supports the trial court's determination that the officers properly seized Appellant's car based on probable cause. Further, the State suggests that "all issues concerning the detention of [Appellant], the validity and execution of the search warrant and the voluntariness of [Appellant's] statement are beyond the scope of the certified question. It is plain from the written reservation of the certified question that the State is correct and we cannot review these latter issues.

This Court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise. *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Our review of a trial court's application of law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S .W.3d 75, 81 (Tenn. 2001) (citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). When the trial court's findings of fact are based entirely on evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions, and the trial court's findings of fact are subject to de novo review. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures by government agents. *See* U.S. Const. amend. IV; Tenn. Const. art. I, § 7. "These constitutional provisions are designed to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" *State v. Keith*, 978 S. W.2d 861, 865 (Tenn. 1998) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967)). The Tennessee Supreme Court has noted previously that "[a]rticle I, [section] 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment [of the United States Constitution]," and that federal cases applying the Fourth Amendment should be regarded as "particularly persuasive." *Sneed v. State*, 423 S.W.2d 857, 860 (Tenn. 1968).

Under both constitutions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *Yeargan*, 958 S .W.2d at 629 (citing

*Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)); *see also State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003).

The "automobile exception" allows police officers to search or seize a vehicle without a warrant if they have probable cause to believe the vehicle contains contraband. *Carroll v. United States*, 267 U.S. 132, 149 (1925); *State v. Leveye*, 796 S.W.2d 948 (Tenn. 1990). The rationale for the exception rests upon (1) the impracticability of obtaining a search warrant in light of the inherent mobility of an automobile; and (2) the reduced expectation of privacy with respect to one's automobile. *California v. Carney*, 471 U.S. 386, 390-93 (1985); *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976). "Probable cause has been defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." *State v. Hemming*, 975 S.W.2d 290, 294 (Tenn. 1998). If the police have probable cause to believe that an automobile contains contraband, the officers may either seize the vehicle and then obtain a warrant or they may search the vehicle immediately. *Chambers v. Maroney*, 399 U.S. 42, 52 (1970).

Looking at the case herein, the investigation revealed that Appellant was the last person seen with the victim alive. Officers knew that Appellant had given the victim a ride in the Lumina on the night before the victim's body was discovered. Appellant was vague and inconsistent under questioning about whether the ride Appellant gave the victim was for money or not. The car was parked in a public lot and Appellant had informed the officers that other people had access to the vehicle. Officer Mullins expressed concern about the mobility of the vehicle and the preservation of any evidence that might have been inside. Further, officers knew that the victim's body had been transported from the scene of the murder to the location where the body was found. Although, this case presents a close question, we believe there is at least minimal probable cause to seize the Appellant's car and tow it to a secure location. This issue is without merit.

*Competency*

Appellant also challenges the trial court's determination that he was legally competent to stand trial. The State argues that this issue is not dispositive and, therefore, not appropriate for review via a certified question of law. We agree.

For a question to be dispositive we "must either affirm the judgment or reverse and dismiss. A question is never dispositive when we might reverse and remand . . . if we . . . decided the question on its merits and found in favor of the defendant." *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). Further, a question regarding suppression of the evidence is not dispositive if other incriminating evidence exists in the record outside the scope of that question. *State v. Dailey*, 235 S.W.3d 131, 135 (Tenn. 2007).

In *State v. Bailey*, 213 S.W.3d 907 (Tenn. Crim. App. 2006), this Court examined the issue of a defendant's competency in the context of a certified question and determined that the resolution of the issue would not result in a final disposition of the case because, even if the court determined that the trial court erred, the result would be to remand the matter to the trial court. *Id.* at 912. Thus, we determined that this issue was not dispositive and that the court was without jurisdiction to make a determination on the matter. The case herein is akin to *Bailey*. A determination of incompetence would not lead to a dismissal of the charges against Appellant. This question was not properly certified. Accordingly, we are without jurisdiction to review this issue on appeal.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE