IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 16, 2019

## STATE OF TENNESSEE v. JAMES FLOYD BREWER, JR.

**Appeal from the Circuit Court for Bedford County**
**No. 18510     Forest A. Durard, Jr., Judge**

_____

### No. M2018-00566-CCA-R3-CD

_____

Following a jury trial, the Defendant, James Floyd Brewer, Jr., was convicted of two counts of possession of 0.5 grams or more of a Schedule II controlled substance (methamphetamine) with intent to sell or deliver and one count of misdemeanor possession of drug paraphernalia.  The trial court merged the methamphetamine convictions and sentenced the Defendant to an effective twelve years' incarceration.  On appeal, the Defendant contends that the trial court erred in denying the Defendant's motion to suppress evidence obtained from a warrantless search of the Defendant's car.  Because we conclude that the search was valid as a search incident to an arrest and an inventory search, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Matthew S. Bailey (on appeal), Spencer, Tennessee; and Paul Cross (at trial), Monteagle, Tennessee, for the appellant, James Floyd Brewer, Jr.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Robert J. Carter, District Attorney General; and Mike Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

FACTUAL BACKGROUND

This case arises from an August 12, 2016 incident in which the Defendant's truck was searched without a warrant.  On July 5, 2017, the Defendant filed a motion to suppress evidence seized during the search.  The Defendant argued in the motion that the

search was not justified by any exception to the warrant requirement and that the evidence obtained pursuant to the search—in particular, methamphetamine—should be suppressed as "fruit of the poisonous tree."[1]  The Defendant later filed an amended motion lodging a separate objection to the search of the containers in which the methamphetamine was found.  He argued that the search did not fall under the inventory exception to the warrant requirement.  The trial court held a hearing on the motion on July 24, 2017.

At the suppression hearing, 17th District Drug Task Force Special Agent Shane George testified that on August 12, 2016, Coffee County Sheriff's Investigators James Sherrill and Kelly Smith contacted him regarding their intention to arrest the Defendant and seize his truck pursuant to a capias.  Agent George was assigned to Bedford County, where the Defendant lived, and the Coffee County officers intended to serve the capias at the Defendant's home.  Agent George met Investigators Sherrill and Smith, and the group drove to the Defendant's address.  When they arrived, the Defendant was standing in a carport beside the driver's side of the truck.  The Defendant was in the process of closing the driver's side door.  Agent George turned on his dashboard camera, and the Defendant leaned against the back of the truck bed as the officers approached.  Agent George searched the Defendant for weapons, found a methamphetamine pipe in the Defendant's pocket, and handcuffed the Defendant.

Agent George and the Coffee County officers informed the Defendant that they had a warrant for his arrest and that his truck was going to be seized as part of that investigation.  Agent George issued Miranda warnings to the Defendant, who responded that he understood.  Agent George described the Defendant's behavior throughout the encounter as "kind and cooperative."

Agent George had received "numerous" complaints about the Defendant's manufacturing and distributing methamphetamine, and he decided to ask for consent to search the Defendant's house.  Agent George also questioned the Defendant regarding whether he was involved in methamphetamine distribution, but the Defendant denied any involvement.

Meanwhile, Investigator Sherrill told Agent George that he would conduct an inventory search of the truck.  Investigator Sherrill's search resulted in the discovery of "ice methamphetamine" in a pouch inside a "fanny pack," which was located on the truck's dashboard, as well as inside a separate keychain.  The pouch, fanny pack, and

---

[1] Under the "fruit of the poisonous tree" doctrine, any evidence obtained through the exploitation of an unlawful search must be suppressed.  See Wong Sun v. United States, 371 U.S. 471, 488 (1963).

keychain were all closed and unlocked. The pouch contained about five grams of methamphetamine, and the keychain contained about fifteen grams. Agent George had seen the keychain attached to a key in the truck's ignition when he approached. If a person were standing next to the truck's open door, the person could reach the fanny pack and keychain "very easily." The officers also found a digital scale inside the fanny pack. Agent George noted that the Defendant did not object to the search at any point.

Agent George told the Defendant, "[Y]ou got caught with your hand in the cookie jar. They have found drugs in your truck and you are in trouble." Agent George noted that the Defendant "realized that he was in a pretty tough situation." Special Agent Kyle Brewer with the drug task force arrived, and upon further questioning, the Defendant told Agents Brewer and George that he was selling methamphetamine to a "close circle of about [five] friends[.]" The Defendant gave Agent Brewer the name of his supplier and verbally consented to the search of his house.[2] Agent George told the Defendant that he could refuse consent or recant consent at any time.

During the search of the house, officers found a safe containing "just a whole bunch of drug paraphernalia[,]" including plastic bags, digital scales, a methamphetamine pipe, and about $2,800 cash. After this discovery, Agent George repeated to the Defendant that he could recant consent, and the Defendant was "fine with it." After the officers finished searching the truck, they allowed the Defendant to remove tools and personal property from the truck before it was towed to Coffee County. Investigator Sherrill explained a "Notice of Property Seizure and Forfeiture of Conveyances" form to the Defendant. Agent George transported the Defendant to Bedford County on the methamphetamine and drug paraphernalia charges, and the Defendant was subsequently sent to Coffee County relative to the capias.

Agent George testified that his agency's policy was to inventory the contents of seized vehicles to ensure they did not contain items of "great value," to make certain nothing was taken from the property "that [didn't] need to be taken off the property[,]" and to protect against claims of theft. He was aware that the Coffee County Sherriff's Department had generated an inventory list of items in the truck, although he had not seen it. Agent George observed Investigator Sherrill filling out paperwork at the scene but did not see what Investigator Sherrill wrote. He was uncertain as to whether anyone inventoried the items the Defendant removed from the truck. He did not recall whether an enclosed portion of the carport was searched.

---

[2] Defense counsel noted at the hearing that the search of the house was not being challenged unless it was "fruit of the poisonous tree of the other search[.]"

Agent George acknowledged that he had been served with a subpoena to produce a copy of his agency's inventory protocol. He stated, though, that he did not bring it to the hearing because his agency did not search the truck and he thought the request was "odd." The trial court admonished the State that it should have filed a motion to quash the subpoena and stated that the court could not make a ruling until the document had been introduced as an exhibit. The State provided a copy of the protocol after a recess, and the court allowed the Defendant to call Agent George as a witness in order to question him about the document. However, the record does not reflect that Agent George was recalled or that the document was introduced as an exhibit.

Investigator Sherrill testified that in January 2016, he was part of an investigation involving a controlled methamphetamine sale from the Defendant. The transaction was recorded on camera and took place in Coffee County in the Defendant's truck. The Defendant was indicted and officers obtained a capias. On August 12, 2016, Investigator Sherrill contacted Agent George and asked him to accompany him to the Defendant's house to serve the warrant. Investigator Sherrill also noted that he advised Agent George that his information indicated the Defendant was "cooking methamphetamine" at his house. The Defendant's case was part of a coordinated drug operation in which officers seized multiple vehicles and "serv[ed] indictments" on the same day. Investigator Sherrill planned to seize the Defendant's truck. When the officers arrived at the Defendant's house, Investigator Sherrill saw the Defendant come out from a carport where his truck was located. The officers informed the Defendant that they "had an indictment for him from the sale in Coffee County."

While Agent George spoke to the Defendant and asked for consent to search his house, Investigator Sherrill "was doing stuff on [his] end." The Defendant was patted down, and Investigator Sherrill did not believe anything was found. He did not recall whether the Defendant was handcuffed. The Defendant told them that the truck was not operational, and Investigator Sherrill called a tow truck. The Defendant wanted to take items out of the truck, and Investigator Sherrill told him he could not enter the truck until Investigator Sherrill had "[gone] through it." The Defendant was hesitant to allow the search. Investigator Sherrill noted that "[t]here was a lot of stuff" in the truck.

Investigator Sherrill conducted an inventory search of the truck, which was unlocked. When asked if Coffee County Sheriff's Department had a policy regarding searching seized vehicles for which forfeiture was being sought, Investigator Sherrill responded,

> There is a policy that we do a vehicle inventory tow-in [sheet], and in that tow-in [sheet] there is an inventory list of items that [are] found in the vehicle because if we take somebody's vehicle, we want to know exactly

-4-

what is in there. We don't want to be accused of taking anything. That just shows what is in the vehicle at the time it was taken.

He stated that agency policy left up to the officer's discretion whether to list items in the inventory that were found in the vehicle but ultimately not seized.

Investigator Sherrill opened a black pouch on the dashboard, which contained " a large quantity of methamphetamine." He also found a smaller amount of methamphetamine in a "little container attached to the key chain" hanging from the key in the ignition. Neither the pouch nor the container was locked. He gave both items to Agent George.

After the search, the Defendant was allowed to remove vehicle parts, tools, and other personal items from the truck, but he was not permitted to remove anything that was attached to the truck. Investigator Sherrill filled out paperwork at the scene notifying the Defendant that he was seizing the truck. He did not hear Agent George's subsequent conversation with the Defendant.

The search of the Defendant's house occurred after the search of the truck was complete, and Investigator Sherrill believed the tow truck had arrived before they began to search the house. Although Investigator Sherrill walked inside the Defendant's house, he did not participate in the search. He denied that the Defendant ever objected to the search of the house and thought that the Defendant commented, "[Y]ou can search the house because everything you found was in the truck, nothing else was here." Investigator Sherrill, Agent George, and the Defendant talked inside the house for a while; eventually, the Defendant was arrested and taken to the Bedford County Sheriff's Department.

Investigator Sherrill identified an August 12, 2016 Notice of Seizure and an August 15, 2016 Affidavit in support of a forfeiture warrant. He acknowledged that in the affidavit, a box was not checked to order seizure of "[a]ll property which is used or intended for use as a container[.]" The documents referenced seizure of a Ford F150 truck and $375 cash. Investigator Sherrill completed a vehicle inventory and listed only the items that remained in the truck when it was towed and the items seized by Agent George. The inventory included a black pouch containing methamphetamine, scales, cigarettes, a pipe used to smoke illegal drugs, speakers and an amplifier that were mounted on the truck, a keychain with two bags of methamphetamine, and a tool box attached to the truck bed. Investigator Sherrill acknowledged that the Defendant used a wheelbarrow to remove a large quantity of items out of the truck before it was towed. Investigator Sherrill further acknowledged portions of the police cruiser recording

-5-

showing Agent George removing the Defendant's handcuffs and the Defendant taking items from the truck.

The police cruiser recording was played for the court. The recording, which was partially obscured by a reflection of the cruiser's dashboard, showed the Defendant leaning against the bed of a truck parked under a carport. A police officer wearing white sunglasses greeted the Defendant and asked him if he was alone. Further conversation was not recorded. The officer gestured to the Defendant, and the Defendant stepped out and put his arms out at his sides. The first officer patted down the Defendant; a second officer wearing a polo shirt stood nearby; and a third officer carrying a manila envelope stood to the left of the first officer. The Defendant appeared to speak with the officers. The Defendant emptied his pockets partially, and the first officer grabbed the Defendant's hand, handcuffed him, and removed an object from his pants pocket. Agent George laid the contents of the Defendant's pockets on the truck's open tailgate.

While the first officer was searching the Defendant's pockets, the third officer walked toward the driver's side of the truck. The second officer obscured the view of the third officer, but the driver's side door of the truck did not appear to open. The third officer moved back into view and looked into an open tool box mounted on the truck bed. The officer picked up an item from the Defendant's pocket on the tailgate and examined it. The item was wrapped in either a white cloth or a plastic bag.

The first officer continued to speak to the Defendant, and the second and third officers walked around the front of the carport. The first officer examined the wrapped item from the Defendant's pocket. The Defendant shook his head while speaking to the first officer, and the two men had an animated exchange. The Defendant and all three officers walked outside the frame of the camera.

The third officer returned, searched a small black bag from the tool box, and removed its contents before placing them back inside the bag. He placed the bag inside the tool box. The officer opened the driver's side door of the truck, closed the tool box, and entered the truck. After an interval, the third officer emerged, gave a thumbs-up to a fourth officer, who appeared and wore a backward baseball cap, and the second and fourth officers looked inside the passenger compartment of the truck. The officers periodically emerged and searched the truck. After about five minutes, the third officer brought the handcuffed Defendant back to the truck, and the Defendant sat on the truck's tailgate. The officers walked around the truck, occasionally pausing to speak to the Defendant. The first officer took a camera inside the truck and photographed items inside the truck and other items on the tailgate. The officer removed the Defendant's handcuffs and he climbed into the truck bed, removed items from the tool box and truck, and placed them in a wheelbarrow.

-6-

The trial court denied the Defendant's motion to suppress in a written order. The court found that the Defendant was standing in the "partially open door" of his truck when officers arrived to serve the capias and seize the truck. Incident to his arrest, the Defendant was patted down and "drug paraphernalia was found on his person." The officers knew the truck had been used at the Coffee County drug buy. The court concluded that "[t]hese facts [led] to a reasonable belief [that] evidence of the crime subject to the capias might be found in the vehicle." The court found that "[e]ven if the seizure of the narcotics found in the truck fail[ed] under an arm's reach analysis[,] the same [was] lawful pursuant to a valid inventory search as the narcotics would have been inevitably discovered during that search." The court noted that the truck would have been inventoried by the Coffee County Sheriff's Department after it had been seized pursuant to civil forfeiture and that the drugs inevitably would have been found. The court further noted that the Defendant was provided with a list of seized items and that the inventory was conducted pursuant to departmental policy.[3]

At the trial, Agent George and Investigator Sherrill testified consistently with their suppression hearing testimony. The evidence consisted of the seized drugs and paraphernalia, photographs taken by Agent George of the Defendant's truck and house, and the laboratory analysis of the drugs. A body camera recording from Agent George was played for the jury, which depicted a portion of the search of the Defendant's home. In it, Agent George explained to the Defendant that he could withdraw his consent to search at any point, and the Defendant responded that he was not withdrawing his consent. Special Agent Brewer testified about his conversation with the Defendant relative to the Defendant's methamphetamine supplier. Tennessee Bureau of Investigation (TBI) Special Agent Laura Cole, an expert in forensic chemistry, testified regarding the laboratory analysis of the drugs. Ray Young, Jr. testified for the defense that he paid the Defendant $2,000 in cash for tree removal work on August 5, 2016.[4]

Based upon this evidence, a jury convicted the Defendant of possession of 0.5 grams or more of methamphetamine with the intent to sell, possession of 0.5 grams or more of methamphetamine with the intent to deliver, Class B felonies, and unlawful possession of drug paraphernalia, a Class A misdemeanor. The trial court merged Counts 1 and 2 and sentenced the Defendant to an effective twelve years as a Range I, standard offender.

---

[3] We note that the trial court confused which officer conducted the search (Investigator Sherrill, not Agent George). However, this mistake does not affect the legal analysis and conclusions we examine on appeal. In addition, the officers' testimony in this case is not consistent with the timeline of events shown in the recording. The order of operations does not bear on the issues on appeal, except to confirm that Investigator Sherrill had seen the methamphetamine pipe before he searched the truck.

[4] The defense's argument at trial was that the methamphetamine in the Defendant's possession was for personal use.

ANALYSIS

On appeal, the Defendant contends that the trial court erred in denying his motion to suppress evidence recovered pursuant to a warrantless search of his truck. The Defendant argues (1) that the search was not incident to an arrest because the Defendant was not within arm's reach of the passenger compartment and the drug buy occurred seven months prior to the arrest, making the expectation that evidence of the crime was still present in the truck unreasonable; (2) that the search was not an inventory search because the search did not occur contemporaneously with the offense and the Coffee County Sheriff's Department policy did not extend to opening closed containers within a vehicle; (3) that the inevitable discovery doctrine did not apply because of the aforementioned lack of departmental policy on opening closed containers and the officers were able to obtain a search warrant; and (4) that the evidence from the house should have been suppressed because consent was only given after officers confronted him with the methamphetamine from the search of the truck, making the drug paraphernalia seized inside the house "fruit of the poisonous tree." In response, the State avers that the search of the Defendant's truck was proper as a search incident to an arrest and an inventory search.

A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Both proof presented at the suppression hearing and proof presented at trial may be considered by an appellate court in deciding the propriety of the trial court's ruling on a motion to suppress. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998); State v. Perry, 13 S.W.3d 724, 737 (Tenn. Crim. App. 1999). However, the prevailing party "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence." Odom, 928 S.W.2d at 23. Furthermore, an appellate court's review of the trial court's application of law to the facts is conducted under a de novo standard of review. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001) (citations omitted).

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. Any "warrantless search or seizure is presumed [to be] unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998).

### A. Search Incident to an Arrest

After making a lawful custodial arrest, a police officer is permitted to search an arrestee and the immediate surrounding area, including "the passenger area of any vehicle in which the arrestee was riding." State v. Crutcher, 989 S.W.2d 295, 300-01 (Tenn. 1999). It is irrelevant whether a defendant is inside or outside a vehicle when the police initiate contact. Thornton v. U.S., 541 U.S. 615, 620-21(2004). One exception to the general rule requiring a warrant is when a vehicle is searched incident to an arrest and (1) the arrestee is "unsecured and within reaching distance of the passenger compartment at the time of the search," or (2) it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." Arizona v. Gant, 556 U.S. 332, 343 (2009) (quoting Thornton, 541 U.S. at 632).

In this case, the Defendant was handcuffed and secured by the officers during the entirety of the search. We turn, then, to whether it was reasonable to believe evidence of the crime of arrest was present in the truck. Although the Coffee County arrest warrant is not present in the record, Investigator Sherrill's testimony indicated that the crime for which the Defendant was arrested was the sale of methamphetamine occurring in January 2016.

We disagree with the trial court's conclusion that probable cause existed for the officers to believe that evidence relevant to the January 2016 methamphetamine sale was still present in the truck. However, this error is harmless because the methamphetamine pipe in the Defendant's pocket gave Agent George an independent basis upon which to arrest him. The Defendant's standing in the open truck door, when combined with the discovery of the methamphetamine pipe and the officers' collective knowledge of the Defendant's history of selling methamphetamine and the "numerous" complaints of his continuing to sell methamphetamine, was sufficient to create a reasonable belief that further evidence relevant to the crime of drug paraphernalia possession might be found inside the truck. The truck was properly searched incident to the arrest for possession of illegal drug paraphernalia, and the Defendant is not entitled to relief on this basis.

### B. Warrantless Inventory Search

The Defendant argues that because the warrantless seizure of his truck occurred seven months after the offense, the inventory exception to the warrant requirement should not apply. The State responds that the inventory search was appropriate because seizure

was authorized by Tennessee Code Annotated section 53-11-451(b)(4), as well as the automobile exception to the warrant requirement.[5]

Inventory searches on lawfully impounded vehicles are an exception to the search warrant requirement. See State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992). Generally, in order to impound a vehicle, "reasonable cause to take [the arrestee's] vehicle into custody" must exist; for example, if a vehicle obstructs traffic and the driver cannot arrange for it to be picked up, it may be impounded. Drinkard v. State, 584 S.W.2d 650, 653 (Tenn. 1979). When conducting an inventory search, officers may open unlocked containers within a vehicle "when necessary to make a realistic and meaningful inventory." State v. Glenn, 649 S.W.2d 584, 589 (Tenn. 1983) (quoting State v. Roberge, 642 S.W.2d 716, 720 (Tenn. 1982)).

The Defendant challenges both the lawfulness of the seizure and the propriety of the inventory search. We will examine first whether the truck was lawfully impounded by Investigator Sherrill.

Tennessee Code Annotated section 53-11-451(a)(4) states that vehicles used to facilitate violation of Code sections 39-17-401-455, governing criminal drug offenses, are subject to forfeiture. Relevant to this case, a police officer may seize a vehicle without a forfeiture warrant under certain circumstances, including seizure incident to an arrest or where probable cause exists to believe the vehicle "was used or is intended to be used" in commission of a criminal drug offense. Tenn. Code Ann. at § 53-11-451(b)(1)-(4). The record reflects that the Coffee County forfeiture warrant was issued on August 15, 2016, three days after the truck was impounded.

The Defendant contends that although the seizure was permissible by statute, it was unconstitutional pursuant to our supreme court's opinion in Fuqua v. Armour, 543 S.W.2d 64, 65 (Tenn. 1976). In Fuqua, the defendant sold illegal drugs on two occasions to undercover officers. Id. Twenty-one days after the last sale, the defendant was arrested at his residence pursuant to a grand jury presentment. Id. The same day, his vehicle, which was parked in a carport at the residence, was seized pursuant to the forfeiture statute.[6] Id. The court held that exigent circumstances had not been proven and

---

[5] The Defendant argues that the State's discussion of the automobile exception was not raised in the trial court and has been waived. Were the State raising the automobile exception as an alternative and independent justification for the search, we would agree. However, the State explores the automobile exception in response to caselaw upon which the Defendant relied at the suppression hearing and on appeal. We will address the automobile exception in this limited context.

[6] Our review of Tennessee Code Annotated section 52-1443(b) (1974), the predecessor to Code section 53-11-451(b), reflects that the relevant statutory language has not changed.

that as a result, a warrant should have been obtained in the twenty-one-day period between the offense and the seizure.  Id.

Then-effective jurisprudence regarding the automobile exception to the Fourth and Fourteenth Amendments required demonstrable exigent circumstances if a vehicle was parked or "at rest" as opposed to being mobile on a roadway.  Fuqua, 543 S.W.2d at 68; see Coolidge v. New Hampshire, 403 U.S. 443 (1971), U.S. v. Young, 489 F.2d 914 (6th Cir. 1974).  The court specifically noted that "the Coolidge, Young and [U.S. v. McCormick, 502 F.2d 281 (9th Cir. 1974)] decisions are controlling in determining the validity of the seizure without a warrant of the automobile in the instant case."  Fuqua, 543 S.W.2d at 68.

However, the analysis upon which Fuqua was based was overruled by subsequent changes to the automobile exception.  See State v. Leveye, 796 S.W.2d 948, 953 (Tenn. 1990) (adopting California v. Carney, 471 U.S. 386 (1985)).  "Carney authorizes a warrantless search of a vehicle parked in a public place, after a recent crime, providing probable cause to believe the vehicle contains contraband, without any actual likelihood that the risk of delay to obtain a warrant is high."  Leveye, 796 S.W.2d at 952.  In addition, the Carney court held that "[b]esides the element of mobility, less rigorous warrant requirements govern [automobiles] because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office."  471 U.S. at 391 (quoting South Dakota v. Opperman, 428 U.S. 364, 367 (1976)).  Our supreme court held in State v. Saine that "the automobile exception does not require a separate finding of exigency under the Tennessee Constitution."  297 S.W.3d 199, 207 (Tenn. 2009).

The Coffee County officers were clearly within their authority to seize the truck for forfeiture because it had been used in the commission of a drug offense in January 2016.  See Tenn. Code Ann. § 53-11-451(b)(4).  Although we note that it would have been a better practice for the officers in this case to obtain a forfeiture warrant in the intervening seven months, our federal and state constitutional jurisprudence favors officers' ability to seize automobiles on site because of their inherent mobility and status as a pervasively regulated item.  Carney, 471 U.S. at 391.  We cannot conclude that the seizure was unconstitutional.[7]

---

[7] We note that a probable cause determination was promptly made after the seizure in compliance with Tennessee Code Annotated section 40-33-204 (2016) (stating that a forfeiture warrant must be obtained within five days of seizures occurring in connection with an arrest).
[8] We decline to address the Defendant's argument regarding inevitable discovery.  We acknowledge that the Defendant responds to the trial court's statement in the suppression hearing order that due to the

Relative to the propriety of the inventory, the Defendant contends that the State did not present evidence that the search of the container by Investigator Sherrill was conducted pursuant to departmental policy. However, Investigator Sherrill testified that departmental policy required an inventory of every vehicle seized and that neither the magnetic pouch nor the keychain were locked. Pursuant to Glenn, Investigator Sherrill's inventory properly extended to opening unlocked containers. See 649 S.W.2d at 589. The Defendant's argument is without merit and he is not entitled to relief on this basis.[8]

### C. Consent

The Defendant does not contest the validity of his consent to search his house other than as fruit of the unlawful search of his truck. Because we have concluded that the officers did not violate the Defendant's constitutional rights by searching the truck, his consent was otherwise validly given. We note Agent George's testimony that he explained to the Defendant he could withdraw consent at any time and that the Defendant renewed his consent at least once during the search, which was confirmed in part by the body camera recording. The Defendant is not entitled to relief on this basis.

### CONCLUSION

Based on the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

availability of a valid inventory search pursuant to forfeiture, the methamphetamine would have been "inevitably discovered"; however, in order for this doctrine to apply there must have first been illegally obtained evidence. State v. Hutchison, 482 S.W.3d 893, 920 (Tenn. 2016). Because we conclude the evidence was not illegally obtained, the inevitable discovery doctrine is not applicable in this case.